IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ISC FORWARDERS, INC., <br> *Plaintiff* | § <br> § <br> § | |
| v. | § <br> § | CASE NO. 5:23-CV-00094 |
| PAYLESS JANITORIAL, INC., <br> DAVID AMOYELLE, SOFLO URBAN <br> TEAM LLC, GUILLERMO DUARTE, <br> PEDRO I. SILVA NICOLAS, and MIGUEL <br> A. SILVA NICOLAS <br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Plaintiff, ISC Forwarders, Inc. ("ISC" or "Plaintiff"), and files this its Plaintiff's First Amended Original Complaint against Payless Janitorial, Inc. ("Payless"), David Amoyelle ("Amoyelle"), SoFlo Urban team LLC ("Soflo"), Guillermo Duarte ("Duarte"), Pedro Silva ("Silva"), and Eduardo de Castro ("Castro") (collectively, "Defendants"), and for cause of action would respectfully show the Court as follows:

### I.    PARTIES

1.    ISC Forwarders, Inc. is a corporation organized under the laws of the State of Texas.

2.    Payless Janitorial, Inc. is a corporation organized under the laws of the State of Florida, which may be served with process by serving its registered agent, ARNALI MGMT LLC, at its registered address, 151 N. Nob Hill Road, Suite 400, Plantation, FL 33324. Perry Dubinski is an authorized representative of Payless Janitorial, Inc.

3.    David Amoyelle is an individual resident of New Jersey who may be served with process at 90 Oak Street, Clifton, NJ 07014 or 1776 Kathleen Court, Toms River, New Jersey 08755-2230.

4.      SoFlo Urban Team LLC was a limited liability company previously organized under the laws of Florida, which may be served with process by serving its registered agent, Pedro I. Silva Nicolas, at his registered address, 15703 Pines Blvd., Suite 200, Pembroke Pines, FL 33027.

5.      Guillermo Duarte is an individual resident of Florida who may be served with process at 2625 Executive Park Dr. Suite 5, Weston, FL 33331.

6.      Pedro I. Silva Nicolas is an individual resident of Florida who may be served with process at 15703 Pines Blvd., Suite 200, Pembroke Pines, FL 33027.

7.      Miguel A. Silva Nicolas is an individual resident of Florida who may be served with process at 15703 Pines Blvd., Suite 200, Pembroke Pines, FL 33027.

## II.      JURISDICTION & VENUE

8.       This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.       Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

10.      The Court is authorized to award injunctive relief under its equitable powers.

## III.      AGENCY

11.      Whenever it is alleged that the Defendants committed any act, it is also meant that the Defendants committed said act or acts through or by their respective officers, directors, agents, employees, servants, contractors, and/or representatives, acting with full authority, by virtue of express, apparent, or implied agency, within the course and scope of any employment and/or with the full ratification of the Defendants.

## IV.    FACTUAL BACKGROUND

**A.    ISC.**

12.    ISC is a logistics and freight forwarding company located in Laredo, Texas that provides the following services: (a) import and export of goods to Mexico, (b) tariff code classification, (c) in & out, (d) sort & segregate, (e) loading & unloading, and (f) labeling.

13.    ISC also provides incidental warehousing services in Laredo, Texas, at its warehouse located at 8400 San Lorenzo Dr., Laredo, Texas 78045.

**B.    The Parties & Shipments.**

14.    On or about May 14, 2020, Payless, Amoyelle, and Duarte worked with ISC to import hand sanitizer product from Mexico into the United States. Payless was the USA importer of record and Duarte and Amoyelle were responsible for coordinating the importation and related storage and processing fees with ISC.[1] Attached as **Exhibit 1** is a true and correct copy of a document naming Payless as the USA importer of record. Duarte additionally acted on behalf of Soflo as its Commercial Director in importing additional shipments of hand sanitizer products with ISC. Attached as **Exhibit 2** is a true and correct copy of a letter sent on June 8, 2015, evidencing the authority granted from Eduardo de Castro, as previous President of Soflo, to Duarte, to act as the importer of record regarding the entries the subject of this lawsuit.

15.    Soflo was formed on or about September 25, 2017, and voluntarily dissolved on or about January 14, 2021.

16.    On May 14th, Payless imported three shipments of hand sanitizing product through the port of Laredo and presented the product at the port for inspection by the United States Customs and

---

[1] Upon information and belief, Amoyelle purchased the hand sanitizer product from a company called Tropicosmeticos, using his own label called "Cleaners" and imported the entries through Liberty International; however, Duarte mistakenly imported three of the orders under the Payless TIN when they should have been imported under Soflo.

Border Protection Agency ("CBP"). The below shipments contained their own entry numbers and met FDA standards:

- 9XW-0035420-9/Importer: Payless/Manufacturer: Tropicosmeticos SA de CV ("Tropicosmeticos");
- 9XW-0035425-8/Importer: Payless/Manufacturer: Tropicosmeticos; and
- 9XW-0035412-6/Importer: Payless/Manufacturer: Tropicosmeticos.

17.     On or about May 18, 2020, Payless attempted to import the following two additional shipments from Mexico to the United States, which were found to be nonconforming:

- 9XW-0035428-2/Manufacturer: Electronica Audiocode SA de CV ("Electronica"); and
- 9XW-0035462-1/Manufacturer: Electronica

The above entries were transported for disposal on or about October 20, 2022. Duarte paid the disposal fees for said entries.

18.     The following entries, which Duarte imported under his authority as Commercial Director of Soflo, were also nonconforming:

- 9XW-0035448-0/Importer: Soflo Urban Team LLC/Manufacturer: Tropicosmeticos SA de CV; and
- 9XW-0035481-1/Importer: Soflo Urban Team LLC/Manufacturer: Electronica Audiocode SA de CV

(collectively, "Shipments"). The Shipments remain in ISC's possession.

**C.     CBP & FDA.**

19.     The United States Federal Drug Administration ("FDA") inspects products entering the United States to determine if said products conform to FDA standards. If so, the product clears inspection and enters the United States. However, if the product does not meet FDA standards the product is often impounded in a warehouse in Laredo, Texas pending a final decision or instructions for disposal by the FDA.

20.     Upon inspection of the Shipments by CBP, and as referenced above, CBP discovered that the product being imported did not conform to FDA standards. Attached as **Exhibit 3** is a true and

correct copy of a warning letter the FDA issued to Duarte regarding the nonconforming product.[2] Also, attached as **Exhibit 4** is a true and correct copy of a chart published by the FDA listing hand sanitizer products which contain hazardous materials and are unsafe for consumer use.[3] Said chart includes the nonconforming product, which are part of the subject of this lawsuit.

### D.      Communications Regarding Collection & Disposal.

21.      On or about May 12, 2020, through May 28, 2020, ISC received a total of five non-conforming shipments at its facility. ISC continued to keep the product at its facility, and on or about September 22, 2021, ISC began communicating with Payless, Amoyelle, Duarte, and Soflo to schedule pickup and disposal of the nonconforming product.

### 1.      *David Amoyelle.*

22.      On or about March 2, 2021, Amoyelle sent an email to Plaintiffs regarding return of the nonconforming product and stated, in relevant part, as follows:

> "**Please let me know what is the cost to return these to the factory, this I am happy to pay for**..." (sic)

> "I will also make sure that the factory removes the label at their facility, I have a friend in Mexico Mr. Ashkanaze who will assure that the factory accepts these 3 containers..."

> "I do not want to go around in circles, if they take back these containers I am willing to do my part, in the past I have made payments for invoices which were not fully my responsibility. Guillermo please advise how you can help us, I am willing to put some money into the problems, but we need to work together to resolve this. I really do believe that if we work together all parties will come to an agreement"

Attached as **Exhibit 5** is a true and correct copy of the email chain. (emphasis added).

23.      On or about March 11, 2021, Amoyelle stated in an email to Duarte in relevant part, as follows:

---

[2]https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/tropicosmeticos-sa-de-cv-609041-08102021
[3] https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-hand-sanitizers-consumers-should-not-use

> **I am agreeing to Ana Cecilia to resole the issues of the 3 containers in Mexico to send them back to the Toluca factory and to clear off the issue of the labels. (sic) I will fully pay her for this.** Mr. Leo Ashkanazy will assist me with dealing with Toluca and our lawyer in Mexico. However we need to resolve this issue together in order for everybody to move forward once and for all.

24.    Despite Amoyelle's continued materials representations to Plaintiff that he would resolve the issue and pay Plaintiff the money owed, he did not do so. Approximately one year later, on March 2, 2022, Amoyelle continued his promises to resolve the issue and sent an email to Plaintiff stating, in relevant part, the following:

> "My job here is to help Ana cevcilia[4] as she only delt with the logistics. (sic) **My commitment to you is to move these containers immediately, I will only pay for shipping."**

> "To ship these containers out of your wh[arehou]se, I have a 36,000 dollar credit, never mind the 484,000 with disputes...Are you willing to work with me?" (sic)

See Exhibit 5 (emphasis added).

25.    On or about March 16, 2022, Plaintiff sent an email to Amoyelle in response to his proposal above to pay for removal of the product. Plaintiff stated that it needed authorization from the importers of each entry, Payless and Soflo, to remove the product from ISC's warehouse. In response, Amoyelle stated as follows:

> Good afternoon **Perry is the importer <u>however I am really the importer</u> what do you need from Perry in order to release this load?**

See Exhibit 5 (emphasis added). As stated above, Amoyelle communicated to Plaintiff that he was the true importer of the Shipments. Each of these communications constitute material representations to the Plaintiff, which the Plaintiff relied on to its detriment because the hand sanitizer remains at Plaintiff's warehouse.

---

[4] Ana Cecilia is a representative of Plaintiff, ISC Forwarders, Inc.

26.     On or about March 17, 2022, Plaintiff responded to Amoyelle and stated that Plaintiff needed

an authorization release from the importers that they were releasing the loads to Amoyelle.

27.     On or about March 28, 2022, Amoyelle sent an email to Dubinsky, who is an authorized

representative of Payless, stating as follows:

>  Hi Perry.
>
>  Can you please confirm your authorization to release the shipments ( that were
>  imported under the name of Payless) , to Mr. David Amoyelle?
>
>  If yes, please provide the specific information.
>
>  Thank You!!!

See Exhibit 5.

28.     On or about March 29, 2022, Dubinsky, on behalf of Payless, confirmed as requested. See

Exhibit 5.

29.     On or about March 31, 2022, in addition to continuously representing to Plaintiff that he

would "handle this [himself] till the end" Amoyelle informed Plaintiff that he still needed authorization

from Duarte to arrange transportation of the product imported by Soflo. He stated, in relevant part,

as follows:

>  I would need permission from Guillermo because he is the importer SOFLO
>  URBAN. Then we will arrange for them to be transported back to Britz please
>  provide me with contact email addresses of the company owners, **I will
>  handle this myself till the end.**

See Exhibit 5 (emphasis added).

30.     On or about May 18, 2022, Amoyelle complained of the shipping price and outlined conditions

which he alleged needed to have been completed prior to retrieval of the product. Despite consistent

communications requesting pickup, Amoyelle never picked up the product. See Exhibit 5. In essence,

Amoyelle never intended to perform, as evidenced by the fact that the product discussed in his

communications remains in Plaintiff's warehouse, which made Amoyelle's representations materially false.

   2.   *Guillermo Duarte.*

31.    On or about November 3, 2021, Duarte attempted to avoid liability by asserting that third parties, Mr. Shlomi Swissa and David Mordekhai, were responsible for disposal of the nonconforming product. Attached as **Exhibit 6** is a true and correct copy of the email stating same.

32.    On or about October 11, 2022, Duarte sent an email to Plaintiff regarding the shipments which still needed to be disposed of, including 9XW-0035448-0 and 9XW-0035481-1. Attached as **Exhibit 7** is a true and correct copy of the email stating same.

33.    On or about March 22, 2023, Duarte informed Plaintiff that he was ready to collect shipments 9XW-0035448-0 and 9XW-0035481-1. Attached as **Exhibit 8** is a true and correct copy of the email stating same. On or about March 30, 2023, in response to a follow up from Plaintiff, Duarte informed Plaintiff that he was planning on using Valley Solvents & Chemicals ("Valley Solvents"), located at 15281 State Hwy, 107 Harlingen, Texas 78552, for destruction of 9XW-0035448-0 and 9XW-0035481-1. Attached as **Exhibit 9** is a true and correct copy of the email stating same.

34.    On or about April 10, 2023, Duarte updated Plaintiff that its contact at Valley Solvents would provide a quote for disposal of the nonconforming product by the following week. Attached as **Exhibit 10** is a true and correct copy of the email stating same.  This was the final communication from Duarte to Plaintiff.

35.    Again, despite constant communications from Plaintiff for retrieval of the product, Duarte never picked up the product. It is important to note that Duarte, Amoyelle, and Payless have conducted business dealings together on the transportation of hand sanitizer gel prior to the facts in this case and have an established business relationship. Like Amoyelle, Duarte's made representations to Plaintiff, which the Plaintiff relied on to its detriment.

**E.     The Demand Letter.**

36.     On or about July 25, 2022, the undersigned sent a demand letter to Defendants, on behalf of ISC, demanding that they remove all of Payless's shipment containers from ISC's facility and pay the storage fees incurred as of July 2022 in the amount of $35,610.00, on or before 30 days from the date of the letter. Attached as **Exhibit 11** is a true and correct copy of the demand letter. This demand letter was sent pursuant to Texas Civil Practice and Remedies Code Section 38.001, which allows the Plaintiff to recover reasonable attorney's fees from an individual or organization for rendered services or breach of an oral or written contract. The demand letter advised that if the product was not removed from ISC's facility, that it would file suit to have the product removed and to recover any amounts due. Upon Defendants' failure to comply with ISC's demand, ISC filed this suit.

**F.     Damages.**

37.     Defendants are responsible for the storage fees which have not been paid from November 2022 to the present.

38.     The product is located in four separate zones on ISC's facility[5]; the map below shows Zone 1 in yellow, Zone 2 in green, Zone 3 in blue, and Zone 4 in pink:[6]

---

[5] A true and correct copy of the survey map of ISC's facility is attached herein as **Exhibit 12**.
[6] "Zona" is the Spanish word for Zone.



Below is a description of the four zones with photos of the product, and a breakdown of the storage fees incurred.

1.     **Zone 1.**

39.     The first zone contains 80 pallets of product and occupies approximately 1,665 square feet of space at ISC's facility. ISC's storage fee is $2.00 per square foot per month. Therefore, ISC's storage fees for Zone 1 are $3,330 for every month that the abandoned product has been stored at ISC's facility. Because the product has been stored at ISC's facility from November 2022 to the present, approximately 13 months, Defendants have incurred storage fees in the amount of $43,290.00 for Zone 1.



2.    **Zone 2.**

40.    The second zone contains 25 pallets of product and occupies approximately 126 square feet of space in ISC's facility. Therefore, because the product has been stored at ISC's facility from November 2022 to the present, approximately 13 months, Defendants have incurred storage fees in the amount of $3,250 for Zone 2.



### 3.    Zone 3.

41.    The third zone contains 31 pallets of product and occupies approximately 300 square feet of space of ISC's facility. Therefore, because the product has been stored at ISC's facility from November 2022 to the present, approximately 13 months, Defendants have incurred storage fees in the amount of $7,800 for Zone 3.



4.    <u>**Zone 4.**</u>

42.    The fourth zone contains 20 pallets of product and occupies approximately 387 square feet of space at ISC's facility. Therefore, because the product has been stored at ISC's facility from November 2022 to the present, approximately 13 months, Defendants have incurred storage fees in the amount of $10,060 for Zone 4.



43.    In total, the product occupies approximately 2,478 square feet of space at ISC's facility, which equates to $4,954 in storage fees, monthly. As of today, the product has been stored on ISC's property without payment for 13 months and has incurred approximately $64,402 in storage fees for Zone 1, 2, 3, and 4. Plaintiff shall incur approximately $4,954.00 per month in additional damages until the product is removed from the warehouse. Additionally, Plaintiff has incurred approximately $16,651.24

in attorney's fees because of Defendants' breach of contract and/or because of Defendants' failure to pay for services rendered as outlined above.

44.     This has caused, and continues to cause, ISC significant monetary loss.

## V.     CAUSES OF ACTION

### A.     Breach of Contract: Bailment Agreement

45.     ISC hereby adopts and incorporates by reference the preceding Paragraphs.

46.     In order to state a claim for breach of contract, the Plaintiff must plead: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Gunvor USA LLC v. Valero Mktg. & Supply Co.*, 2020 U.S. Dist. LEXIS 117165.

47.     A bailment relationship does not create a specific cause of action but instead allows the bailor to choose the form of relief for breach, such as an action for breach of contract or an action for conversion. *Id.* "Bailment" is defined as a delivery of personal property by one person (the bailor) to another (the bailee), who holds the property for a certain purpose under an express or implied-in-fact contract. Unlike in the sale of personal property, a bailment involves a change in possession but not title. The elements of a bailment are:

a)   The delivery of personal property by one person to another in trust for a specific purpose;
b)   Acceptance of the delivery;
c)   An express or implied contract that the trust will be carried out; and
d)   An understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs.

*State of Texas v. $281,420.00 in United States Currency*, 312 S.W.3d 547, 551 (Tex. 2010); *Lopez v. Lopez*, 271 S.W.3d 780, 788 n.6 (Tex. App.—Waco 2008, no pet.).

48.     A bailment agreement is governed by the same laws as those that regulate other contracts. *Sanroc Co. Intern. v. Roadrunner Transp. Inc.*, 596 S.W.2d 320, 322 (Civ. App.—Houston [1st Dist.] 1980, no writ). Examples of bailment contracts are those to store, protect, repair, or rent property. While

the bailment agreement may be oral or implied, a written contract is preferable for purposes of proving the terms of agreement. Bailments are frequently classified as: (1) those for the sole benefit of the bailor; (2) those for the sole benefit of the bailee; and (3) those for the mutual benefit of both parties. A bailment for the mutual benefit of both parties is often termed a "bailment for hire". *see Stein v. State*, 132 Tex. Crim. 350, 104 S.W.2d 508, 510 (1937).

49.    The Defendants' failure to provide payment to ISC and their failure to pick up the product left in ISC's facility is a breach of the contract between them. The invoices are valid and enforceable contracts as evidenced by the invoices attached herein. ISC is the proper party to bring suit for breach of contract because it is a party to the contract. The Defendants are proper parties to sue for breach of contract because they are included in the contracts. ISC performed its part of the contract by storing the Defendants' merchandise in ISC's facility for later collection by ISC and otherwise complying with the provisions of the contracts. Last, Defendants wholly failed to pick up the merchandise and pay for the storage fees incurred in same. The Defendants' refusal to pick up product and make payment of storage fees caused ISC actual damages in the amount of $64,402.00 plus attorney's fees totaling approximately $16,651.24, prejudgment and postjudgment interest and will continue to cause injury by incurring further fees. Plaintiff seeks an award of all its damages, including attorney's fees and expenses, as a result of the breach of contract action against Defendants.

**B.    Fraud/Fraudulent Inducement**

50.    ISC hereby adopts and incorporates by reference the preceding Paragraphs.

Pleading alternatively, ISC brings the following action for common law fraud and/or fraudulent inducement against Defendants.

51.    Defendants represented to ISC that they would pay the initial amount in exchange for ISC's importation/storage of the merchandise. Defendants also represented that they would pay the storage fees incurred as a result of the merchandise being held in ISC's warehouse pending pick up. The emails

and statements made by Amoyelle and/or Duarte were material representations made to ISC, ISC relied upon to its detriment. The Defendants' representation that they would pay the agreed upon amount was material because it was necessary for ISC to agree to enter into the contract and import the merchandise. Additionally, each representation provided the Defendants with more time to not pay or remove the product and said delays detrimentally impacted ISC's ability to use its warehouse space. This delays also bought the Defendants time. The Defendants' representations were false statements of fact and false promises of future performance. The Defendants made the representations knowing they were false. In the alternative, Defendants made the false representations recklessly, as positive assertions, and without knowledge of their truth. Defendants intended for ISC to rely on its false representations and had reason to expect that ISC would act in reliance on its false representations. ISC justifiably relied on Defendants' false representations when ISC shipped the merchandise to the United States and stored the merchandise in its warehouse. The Defendants' false representations directly and proximately caused injury to ISC, which resulted in actual damages in the amount of $64,402.00, plus pre-judgment and post-judgment interest.

52.    Plaintiff seeks an award of all their damages as a result of Defendants' common-law fraud and/or fraudulent inducement.

## C.    Quantum Meruit

53.    ISC hereby adopts and incorporates by reference the preceding Paragraphs. Pleading alternatively, ISC brings the following action for quantum meruit against Defendants.

54.    ISC held the Defendants' merchandise. The Defendants benefitted from said importation and storage but failed to pay ISC for same. The Defendants had notice that ISC expected compensation as evinced from the contract between the parties, the importation of the merchandise to the United States, and the invoices sent to Defendants requesting payment. ISC has been damaged as a result of the Defendants' failure to pay for the importation and storage of the merchandise, and therefore, ISC

seeks actual damages in the amount of $64,402.00, plus attorney's fees totaling $16,651.24, pre-judgment and post-judgment interest.

55.     Plaintiff seeks an award of all their damages, attorneys fees and expenses, as a result of the quantum meruit action against Defendants.

**D.      Fraudulent Misrepresentation**

56.     ISC hereby adopts and incorporates by reference the preceding Paragraphs.

57.     A false, material misrepresentation that was either known to be false when made or was asserted without knowledge of its truth is fraudulent. Fraudulent misrepresentation also requires intent that the other party rely on the misrepresentation and be injured by that reliance. A misrepresentation is a false statement of fact or a promise of future performance made with no intent to perform. *Formosa Plastics Corp. v. Material P'ships*, No. 01-00-00584-CV, 2002 Tex. App. LEXIS 7582 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, pet. denied).

58.     The law creates an implied obligation when a party is unjustly enriched in a manner not governed by binding contract. Recovery for unjust enrichment is appropriate when an agreement is unenforceable, invalid, not fully performed, or void for other legal reasons. Unjust enrichment applies the principles of restitution to disputes that are not governed by contract and is usually found when a party obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Id.*

59.     Defendants made a false, material misrepresentation when it contracted with ISC knowing that it would not fulfil its portion of the agreement. Defendants' further made false, material representations when it constantly communicated to Plaintiff that it would resolve the issue.

60.     Defendants' continued promises that it would resolve the dispute and pick up the non-conforming product and their subsequent failure to pick up the nonconforming product is intentional and evidences bad faith.

## VI.    ACTUAL & EXEMPLARY DAMAGES

61.    ISC re-alleges and incorporates by reference the preceding paragraphs herein. As described herein, ISC has suffered substantial damages in excess of $75,000.00. ISC hereby sues for all damages suffered as a result of the Defendants' conduct, including but not limited to, all temporary, loss of use, cost of repair/remediation, stigma, permanent, loss of market value, actual, special, consequential, general, exemplary, benefit of the bargain, reliance, restitution, out of pocket, lost profit, lost credit, contempt, and loss of goodwill damages.

## VII.    ATTORNEY'S FEES & COSTS

62.    ISC invokes and pleads Chapter 38 of the Texas Civil Practice & Remedies Code and more particularly Section 38.001 therein related to the recovery of attorney's fees and interest. Additionally, a successful party may recover its costs from its adversary. ISC has retained the undersigned attorneys to represent ISC in this cause and has agreed to pay the firm reasonable and necessary attorney's fees. ISC has and will continue to incur reasonable and necessary attorney's fees, costs, and expenses in prosecuting this cause. Thus far, ISC has incurred approximately $16,651.24 in attorney's fees. ISC specifically requests that ISC be awarded its reasonable and necessary attorney's fees against the Defendants' for the services rendered by ISC's attorneys in instituting and prosecuting ISC's claims and/or causes of action in this cause. Furthermore, ISC also specifically requests that it be awarded reasonable and necessary attorney's fees for any appeal made in this cause by the Defendants' to the Court of Appeals and/or the Texas Supreme Court.

## VIII.    NOTICE & CONDITION PRECEDENT

63.    Notice has been provided to the Defendants' prior to the filing of this suit and otherwise by service of ISC's pleadings in this action. ISC alleges that all conditions precedent to the filing of and recovery on the aforementioned claims and causes of action have been performed, complied with, and/or have occurred.

## IX.    JURY DEMAND

64.    Pursuant to FRCP Rule 38 and 5(d), ISC demands a trial by jury on its claims and causes of

action.

## X.    PRAYER

65.    The following is hereby requested from this Court after hearing or final trial on the merits:

    a)    ISC requests that this Court render the relief sought for the claims outlined above, including damages, and attorney's fees for ISC's claims for breach of contract, common law fraud/fraudulent inducement, quantum meruit, and fraudulent misrepresentation;

    b)    ISC requests that this Court award ISC additional economic, incidental, and consequential damages in excess of the minimum jurisdictional limits of this court and not in excess of the maximum jurisdictional limits of this Court;

    c)    ISC requests that this Court award ISC reasonable and necessary attorneys' fees and court costs against the Defendants;

    d)    ISC requests that this Court award ISC pre- and post-judgment interest against the Defendants as allowed by law; and

    e)    ISC requests that this Court award ISC such further relief, at law or in equity, to which it may show itself justly entitled to receive.

Dated: December 22, 2023.            Respectfully submitted,

                                     **WHITWORTH CIGARROA, PLLC**

                                     By:      */s/ Carlos Evaristo Flores*
                                              Carlos Evaristo Flores
                                              SBN: 24050606
                                              cflores@wctexlaw.com
                                              Natalie Lewis
                                              SBN: 24108870
                                              nlewis@wctexlaw.com
                                              602 E. Calton Rd., Ste. 201
                                              Laredo, TX 78041
                                              Telephone: 956-727-4441
                                              Fax: 956-727-2696

                                     *Attorneys for ISC Forwarders, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been served upon the following attorneys via the Court's e-filing system, on the 22nd day of December 2023.

Elisamar Soto
Law Office of Elisamar Soto
1501 Chihuahua Street, Suite 1
(956) 722-0800 telephone
(956) 722-0802 facsimile
esoto@eslawoffice.com
mortega@eslawoffice.com

*Attorney for Defendant,*
*Payless Janitorial, Inc.*

                                     */s/ Carlos Evaristo Flores*
                                     Carlos Evaristo Flores